THE FIRST LUTHERAN CHURCH OF PONTIAC, Appellant, *vs.*
THE ROOKS CREEK EVANGELICAL LUTHERAN CHURCH,
Appellee.

*Opinion filed February 17, 1925—Rehearing denied April 8, 1925.*

1. WAIVER—*the defense of waiver is a legal defense.* Waiver
is a legal defense and is the intentional relinquishment of a known
right, and if a bill to enjoin an ejectment suit should set up facts
showing a waiver it would be demurrable on the ground that it
shows an adequate remedy at law.

2. DEEDS—*effect where a condition subsequent is impossible of
performance.* The fact that a condition subsequent is impossible
of performance when imposed or becomes so by the act of God or
by law, or is illegal, or its performance prevented by the grantor
or by the act of the person for whose benefit the performance was
to be made, does not have the effect of divesting the estate vested
in the grantee.

3. SAME—*when impossibility of performance of condition sub-
sequent is not a legal excuse.* If the impossibility of performance
of a condition subsequent is due to the failure of the grantee to
act within the time he should have acted, the non-performance
is not legally excused and is not a legal defense to an action of
ejectment.

4. ESTOPPEL—*estoppel in pais is not a legal defense.* Acts con-
stituting an estoppel *in pais* cannot be relied upon as constituting
a legal defense to an action of ejectment but may be made the basis
of a bill to enjoin the prosecution of the ejectment suit.

5. SAME—*an estoppel in pais defined.* An estoppel by matters
*in pais* is an indisputable admission, arising from the circumstances,
that the party claiming the benefit of it has, while acting in good
faith, been induced to change his position by the voluntary, ·intelli-
gent action of the party against whom the estoppel is asserted; but
the action of the former must be such as will result in substantial
prejudice to him were he not permitted to rely on the estoppel.

6. INJUNCTION—*when prosecution of ejectment suit by church
organization should be enjoined.* If it is apparent, in a suit by one
church organization to enjoin the prosecution of an ejectment suit
against it by another church organization, that there is no legal
defense to the suit at law, the prosecution of the ejectment suit
should be enjoined until the equities of the parties are determined,
and if the complainant is successful in establishing its rights the
injunction should be made permanent.

APPEAL from the Circuit Court of Livingston county; the Hon. STEVENS R. BAKER, Judge, presiding.

ADSIT, THOMPSON & HERR, for appellant.

TUESBERG, WILSON & ARMSTRONG, for appellee.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

The circuit court of Livingston county sustained a demurrer to the bill, as amended, of the First Lutheran Church of Pontiac, appellant, to enjoin the Rooks Creek Evangelical Lutheran Church, appellee, from prosecuting an ejectment suit brought by appellee against appellant in that court to recover possession of certain real estate in Pontiac and dismissing the bill for want of equity. The First Lutheran Church of Pontiac has prosecuted this appeal.

The material allegations of the bill as amended are in substance the following:  On March 6, 1907, appellee, a religious corporation, conveyed by warranty deed the property in question to appellant. The deed, except the certificate of acknowledgment, is set out *in hæc verba* in a former decision of this court in the ejectment suit, (*Rooks Creek Lutheran Church* v. *First Lutheran Church, 290* Ill. 133,) to which reference is made for the purposes of this suit. About the date of the deed appellant went into possession of the premises and has continued in the possession of the same since that time. It was agreed and understood by appellant and appellee that the grantee should pay a mortgage of $1600 as part of the consideration for the deed. Appellant, through its officers and members, raised the money by subscription to pay the mortgage and solicited some of the officers and members of appellee, who contributed to the payment of the mortgage. Appellee, through its officers and members, admitted its inability to maintain the property and pay the mortgage and proposed the or-

ganization of an independent Lutheran church in Pontiac to take over the church property deeded. The premises were improved with an old building which was not modern in any particular, and the property was not then worth to exceed the amount of the mortgage. Appellant remodeled the church building, put a foundation and basement thereunder, installed a heating plant and modern lighting conveniences, put a new roof on it and re-decorated the interior, all at a cost of about $7000, of which $3000 was raised by subscriptions among its members and in part among the members of appellee. The church was later dedicated. During the year 1914 appellant installed a pipe organ in the church at a cost of $1200 and in 1916 erected a parsonage on the premises at a cost of $5000, by subscriptions by its members and some by the officers and members of appellee, and to secure the remaining $1600 has mortgaged the premises. The appellant did not belong to the Hauges Synod on the date of the deed and has never joined it. Appellee at no time after the delivery of the deed asked or demanded that appellant join said synod.

On May 22, 1911, at a special meeting called for the purpose, appellant revised its constitution by adding thereto article 4. In that article it recognized the necessity of maintaining a connection with a Lutheran body to secure the services of ordained pastors in good standing, for the disciplining of its pastors, and to secure the preaching of the Lutheran doctrine and administering the sacraments in accordance with the teachings of the word of God and the confession of the Lutheran church. Because its membership was made up of various nationalities, coming from different Scandinavian and other Lutheran synods, it was expressed in article 4 that it was deemed expedient to remain for a time as an independent organization synodically, as a number of its members were not then favorable to a connection with a synod, provided that such action should not be construed as a repudiation of the clause in the deed

that the church "be and remain connected with the Hauges Synod." Appellant in said article stated that it was organized as an independent Lutheran church, but that that idea was abandoned in order to obtain the donation by appellee of the church property, subject to the condition that appellant assume the indebtedness thereon and to the other condition that it become and remain connected with the Hauges Synod, and that it was the sense of appellant that it would comply with the latter condition as soon as it could consistently do so without its peace and unity being endangered. It also by resolution provided the way and manner in which it should determine the appropriate time for applying for admission to said synod; that it was constantly thought and hoped by many of its members that it would in time become affiliated with the Hauges Synod without danger to its peace and unity, but that in 1917 the Hauges Synod voluntarily ended its existence,—of all of which facts appellee had full knowledge as they occurred and has at all times by its conduct encouraged appellant to make expenditures and continue its existence out of said synod until such time as conditions would warrant joining without danger to its peace and harmony, and therefore had a reasonable time to connect with said synod until it became impossible, as stated. Thereafter, on January 8, 1918, appellant became affiliated with the Evangelical Lutheran Synod of Northern Illinois.

The bill alleges that since 1907 appellant has had a pastor; that it has an active membership of about 200 persons; that it is a going and growing church organization; that by reason of the Hauges Synod ceasing to exist said condition has become impossible of performance without fault of appellant; that it would be inequitable now for appellee to deprive appellant of said property after by its conduct acquiescing in appellant's delaying to a more opportune time to perform the condition; alleges pendency of the suit in ejectment and that appellee is about to have it again set for

trial; that appellant cannot avail itself of this defense in the suit at law, etc.

Appellee's demurrer was general and special. The principal special grounds are: (1) There is no equity on the face of the bill; (2) impossibility of performance is a legal and not an equitable defense; (3) the allegations of the bill do not show a waiver of the condition and estop appellant from showing one.

A waiver is a legal defense and is the intentional relinquishment of a known right, and there must be both knowledge of the existence of the right and an intention to relinquish it. (*Perin* v. *Parker*, 126 Ill. 201.) The facts set up in the bill do not show that there was a waiver of the performance of the condition by appellee, and if they did, the bill would be demurrable because showing an adequate defense at law in appellant. The theory of the bill is that appellant has no adequate remedy or defense at law and that it shows an equitable defense in appellant. The condition in the deed was determined by this court in the former suit to be a condition subsequent. When the condition is subsequent and impossible of performance at the time at which it is made, or subsequently becomes impossible either by the act of God or by law, or is illegal, or its performance is prevented by the grantor, or the impossibility of performance occurs because of the act of the person for whose benefit the performance is to be made, it does not have the effect of divesting the estate vested in the grantee. (2 Devlin on Real Estate Deeds,—3d ed.—secs. 961, 962; Kales on Estates and Future Interests,—2d ed.— sec. 749; *St. Louis, Jacksonville and Chicago Railroad Co.* v. *Mathers,* 71 Ill. 592; *City of Chicago* v. *Chicago and Western Indiana Railroad Co.* 105 id. 73; *Gray* v. *Chicago, Milwaukee and St. Paul Railway Co.* 189 id. 400; *Jones* v. *Bramblet,* 1 Scam. 276.) The later breach of a condition subsequent is not excused because the fulfillment of the condition has become no longer possible unless this impossibil-

ity of performance arises because of the act of the person for whose benefit the performance was imposed. (*Sherman* v. *Town of Jefferson,* 274 Ill. 294; *Jones* v. *Bramblet, supra.*) The facts in this case, under the foregoing authorities, disclose clearly that appellant has no adequate remedy at law. It could and should have performed the condition within the ten years it had for performance, and cannot now be excused, under the law, because the condition has become impossible of performance, as such impossibility was not brought about by appellee, and appellee has never waived the performance under the facts stated.

We think the bill sets up facts that constitute an equitable defense in appellant known as estoppel *in pais,* which is a defense that can only be made available in equity. (*St. Louis Stock Yards* v. *Wiggins Ferry Co.* 102 Ill. 514; *Baltimore and Ohio and Chicago Railroad Co.* v. *Illinois Central Railroad Co.* 137 id. 9.) An estoppel by matters *in pais* may be defined as an indisputable admission, arising from the circumstances, that the party claiming the benefit of it has, while acting in good faith, been induced to change his position by the voluntary, intelligent action of the party against whom it is alleged. His action must have been of a character to result in substantial prejudice were he not permitted to rely on the estoppel. (Bigelow on Estoppel,—2d ed.—345; 7 Am. & Eng. Ency. of Law, 17, 18; *Washingtonian Home* v. *City of Chicago,* 157 Ill. 414.) The matter of deferring performance of the condition in this case by appellant was for the sole purpose of postponing action to a time when objection to a connection with the Hauges Synod would be abandoned by a sufficient number to show a two-thirds vote for admission, which was prescribed by article 4 as the number that should be favorable to joining the synod, and for the sake of peace and unity among the members. The parties to the deed desired to postpone connection with said synod for the purpose of avoiding strife and contention in the church in

the city of Pontiac, where there was apparently no room for more than one Lutheran church to succeed, and this was expressed in the deed itself, which appears in our former opinion. Appellee was, according to the averments in this bill, aware of the fact that there were objections in the appellant church to joining the Hauges Synod, and by its conduct led appellant to believe that it also preferred to wait for the time when a connection with the synod would insure the peace and harmony in the appellant church desired by all. Appellant made the expenditures on the new church and became liable for a new mortgage debt, as set forth in the bill, relying on appellee being sincere in its declarations for peace and harmony as expressed in the deed, and willing to defer the performance of the condition until such time as such harmony and peace would not be endangered by the performance of the condition, as its conduct indicated.

It would be inequitable for appellee, under the facts set out in the bill, to proceed with the suit in ejectment, and the demurrer to the bill should have been overruled on that ground.

If it is apparent in an action to enjoin a suit in ejectment that there is no defense to the suit at law and plaintiff in ejectment is in equity and conscience estopped from any claim to recover the premises, the suit at law should be enjoined until the rights of the complainant in the equity suit are established or until it is determined that such rights are unfounded. If the complainant is successful in showing that his equitable rights should maintain, then the injunction should be made permanent. (High on Injunctions, secs. 95, 417.)

The decree of the circuit court is reversed and the cause is remanded, with directions to overrule the demurrer to the bill.

*Reversed and remanded, with directions.*